Argued and submitted September 19, 1986, affirmed February 11, reconsideration denied May 15, petition for review denied June 30, 1987 (303 Or 590)

JOHNSTON,
*Appellant,*

*v.*

WATER SAUSAGE CORP. et al,
*Defendants,*

WESTERN EXHIBITORS, INC.,
*Respondent.*

(A8402-00895; CA A38191)

733 P2d 59

Linda K. Eyerman, Portland, argued the cause for appellant. With her on the briefs was Gaylord, Thomas & Eyerman, P.C., Portland.

Lee S. Aronson, Portland, argued the cause for respondent. With him on the brief was Holmes, DeFrancq & Schulte, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Plaintiff brought this action as guardian ad litem for his minor child to recover damages for eye injuries the child sustained when a "water sausage" toy he was playing with burst. The child's mother had purchased the toy from a concessionaire at a wholesale gift show produced and managed by defendant Western Exhibitors, Inc. (defendant). Plaintiff stated claims for negligence under a business invitee theory and strict product liability under ORS 30.900 to 30.920. The trial court granted defendant's motion for summary judgment on both claims and entered judgment accordingly. We affirm.[1]

Defendant is in the business of organizing and conducting wholesale gift shows at which a large variety of gift products are offered for sale to retailers. In June, 1981, it organized the Portland Gift Show, where the child's mother purchased the toy which caused the child's injuries. Defendant does not profit from individual sales made at its gift shows. Rather, it sells memberships to gift product manufacturers and their representatives. A membership entitles the member to rent a booth at defendant's shows and to display and sell its products. Defendant advertises each show. It also prepares and publishes a show directory, which indexes the gift product lines represented by its member sellers and sends out invitations to area gift retailers. The shows are not open to the public.

Plaintiff first contends that the trial court erred in granting defendant's motion for summary judgment on his strict product liability claim, because defendant's business constituted an integral part of the "marketing enterprise," without which the toy would not have been purchased. In the alternative, he contends that defendant is strictly liable for the injuries caused by the toy, because it is vicariously liable for the liability of its member seller who sold the toy and who is strictly liable under ORS 30.920.

ORS 30.900 defines a product liability civil action as

"a civil action brought against a manufacturer, distributor,

---

[1] Plaintiff does not appeal the dismissal of his claims against the manufacturer and the primary distributors of the water sausage toy and the principals of those corporations.

seller or lessor of a product for damages for personal injury, death or property damage arising out of:

"(1) Any design, inspection, testing, manufacturing or other defect in a product;

"(2) Any failure to warn regarding a product; or

"(3) Any failure to properly instruct in the use of a product."

ORS 30.920[2] provides that one who sells or leases a product in a defective condition unreasonably dangerous to the user is liable for harm caused by that condition, regardless of fault, if the product is expected to and does reach the user in substantially the same condition in which it was sold or leased, and the seller or lessor is engaged in the business of selling or leasing the product.

Plaintiff concedes that defendant was not in the business of selling or leasing water sausage toys and, therefore, is not itself strictly liable under ORS 30.920. He argues, rather, that defendant is a "distributor," as the term is used in ORS 30.900 and that ORS 30.920, which prescribes strict liability for sellers or lessors, does not preclude holding a distributor strictly liable under *Restatement (Second) Torts,* §

---

[2] ORS 30.920 provides:

"(1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

"(a) The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

"(2) The rule stated in subsection (1) of this section shall apply, even though:

"(a) The seller or lessor has exercised all possible care in the preparation and sale or lease of the product; and

"(b) The user, consumer or injured party has not purchased or leased the product from or entered into any contractual relations with the seller or lessor.

"(3) It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965). All references in these comments to sale, sell, selling or seller shall be construed to include lease, leases, leasing and lessor.

"(4) Nothing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence or under ORS chapter 72."

402A (1965), which was adopted by the Oregon courts before its codification in 1979 as ORS 30.920.

Section 402A[3] provides, in effect, that one who sells a defective product is strictly liable for injuries suffered because of the product's defective condition. In enacting ORS 30.920, the legislature, in keeping with the Supreme Court's interpretation of the Restatement, expanded the remedy to the lessors as well as the sellers of defective products. *See, e.g., Fulbright v. Klamath Gas Co.*, 271 Or 449, 533 P2d 316 (1975). However, although it could have done so, it did not extend the remedy to non-seller distributors of defective products. Therefore, because the language of the statute does not indicate otherwise, we conclude that strict liability in product liability actions is limited to sellers and lessors of defective products. Accordingly, even assuming that defendant may be considered a distributor for the purpose of ORS 30.900, it is not strictly liable in that capacity for the alleged injuries.

Plaintiff's contention that defendant is strictly liable, because it is vicariously liable for the strict liability of the concessionaire which sold the toy, is not supported by the record. Plaintiff's contention is based on the assumption that an agency relationship existed between defendant and the seller of the toy. However, viewing the record in the light most favorable to plaintiff, including all reasonable inferences of fact to be drawn therefrom, there simply is no evidence that the seller of the water sausage toy was or appeared to be acting on behalf of defendant. Accordingly, the trial court did not err in granting defendant's motion for summary judgment with respect to plaintiff's strict liability claims.

---

[3] Section 402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

■      Plaintiff's final contention is that defendant breached its duty to its business invitees to protect or warn them against dangers about which it had knowledge or those which, with reasonable care, it could have discovered. He bases his claim on *Restatement (Second) Torts,* § 344 (1965), which states:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a)  discover that such acts are being done or are likely to be done, or

"(b)  give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it."

Plaintiff contends that defendant owed a duty to its invitees to "screen, select and inspect" both its member sellers and their products "to discover and eliminate products which were in a dangerously defective condition" or to warn them that no precautionary measures had been taken. Although the injuries were not sustained at the gift show, plaintiff claims that the Restatement is applicable, because the alleged harmful act, the sale of the toy, did happen there.[4]

Even assuming that defendant may have a duty to protect its business invitees from injuries caused by defective products sold by its member sellers, which we need not and do not decide, there is nothing in this record that suggests that defendant knew or should have known that a dangerously defective product was being marketed at the Portland Gift Show. Therefore, as a matter of law, defendant was not negligent in failing to protect or warn its business invitees against purchasing defective products.

Affirmed.

---

[4] In *Jones v. Oberg,* 52 Or App 601, 628 P2d 773, *rev den* 291 Or 662 (1981), we held that the duty of a possessor of property to protect his business invitees against foreseeable injuries was not limited in all instances to injuries sustained on the possessor's property.